UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ESPERANZA DIAZ DEL CASTILLO,

    Plaintiff,

v.

WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES,

    Defendant.

CASE NO. C05-1122JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment from Defendant Washington State Department of Social and Health Services ("DSHS") (Dkt. # 82). Having reviewed the motion and all documents filed in support and opposition, the court GRANTS the DSHS's motion.

## II. BACKGROUND

Plaintiff Esperanza Diaz Del Castillo, a 60-year old Hispanic woman, began working for the DSHS on July 28, 2003. The DSHS hired Ms. Del Castillo as a Disability Adjudicator in its Division of Disability Determination Services ("DDS"), a division responsible for conducting medical determinations on disability claims for the federal Social Security Administration. The DDS required Ms. Del Castillo to complete a six-month probationary period and a 17-week training program, which are prerequisites

ORDER – 1

for all new adjudicators. Fisk Aff. ¶ 4 (Dkt. # 90). Ms. Del Castillo's claims arise out of her experiences during training and the DDS's decision to terminate her probationary employment.

**A.     Ms. Del Castillo's Training**

The DDS initially provided classroom instruction to the ten new adjudicator trainees hired in July 2003. Ms. Del Castillo contends that her classroom instructor, Kelly Fisk, generally resented her questions during lessons, in contrast to Ms. Fisk's favorable responses to the questions of younger, Caucasian trainees. Del Castillo Decl. ¶ 12 (Dkt. # 101).[1] By Ms. Del Castillo's account, on two occasions, Ms. Fisk provided the class with an example of returning a DDS claimant to gainful employment by explaining that a Hispanic claimant could be referred to an appropriate job as a "taco maker." Id. at ¶¶ at 45-47.[2] Ms. Del Castillo later lodged a complaint concerning the remark with Ms. Fisk's supervisor and DDS Regional Manager, Randy White. Id. at ¶ 47. Ms. Del Castillo avers that because she complained, Ms. Fisk summarily ejected her from a subsequent class. Id. at ¶¶ 40-44. In directing Ms. Del Castillo to go home, Ms. Fisk stated that Ms. Del Castillo appeared ill and that she did not "want [Ms. Del Castillo's] germs." Id. at ¶¶ 40-44. Ms. Del Castillo's testimony confirms that she was in fact ill. Id. at ¶ 39.

---

[1] The DSHS moves to strike Ms. Del Castillo's declaration on the basis that she electronically filed the document approximately 45 minutes after the filing deadline. See Reply at 11 (Dkt. # 105). The court denies the DSHS's motion as there is no evidence that the delay prejudiced the DSHS. In addition, the court denies as moot Ms. Del Castillo's motion to strike the affidavits of Vicki Maher and Laura White, which the court does not rely on in considering the DSHS's motion.

[2] Ms. Fisk vigorously disputes this allegation, contending that she stated just the opposite; In explaining that an adjudicator should not suggest jobs according to ethnic stereotypes, she provided examples of inappropriate recommendations, including that a Hispanic claimant become a taco maker, and a Jewish claimant become a kosher pickle maker. Fisk Aff. ¶ 23; see also White Aff. ¶ 17 (Dkt. # 88).

ORDER – 2

Ms. Del Castillo contends that Mr. White derided her by poking fun at her Spanish surname. During introductions of the trainees to DDS staff and management, Mr. White requested that Ms. Del Castillo "translate" her name. When she translated "Del Castillo" to "of the castle," Mr. White dubbed Ms. Del Castillo as "royalty in the Seattle DDS." Id. at ¶ 13.

Mr. White assigned Ms. Del Castillo and one other trainee to the third floor of its Seattle office – in the proximity of their supervisor, Ashley Brothers. White Aff. ¶ 13. Mr. White assigned the remaining eight trainees to the fourth floor. Id. Ms. Del Castillo contends that her physical isolation from the majority of trainees impeded her progress during training, as her co-trainees located on the fourth floor received more one-on-one instruction from their respective supervisors and various medical consultants. Del Castillo Decl. ¶ 25. Ms. Del Castillo's allegations as to the inadequacy of training focus on the shortcomings of Ms. Brother's supervision. She contends that Ms. Brothers was frequently inaccessible. Id. at ¶ 20. Ms. Del Castillo also avers that Ms. Brothers required her to submit questions in writing – in contrast to other employees. Id. at ¶¶ 20, 21, 24. By Ms. Del Castillo's account, Ms. Brothers complained about Ms. Del Castillo's "strong" Spanish accent. Id. at ¶ 49. Ms. Del Castillo further contends that on one occasion, Ms. Brothers admonished her for speaking Spanish with a DDS claimant, explaining that the DDS, "paid interpreters to do that job."[3] Id. at ¶ 48.

In November 2003, the DDS presented each trainee with a certificate signifying the completion of classroom training. Ms. Del Castillo refused to accept the certificate because it contained the "diminutive" "Espie," rather than her full name, Esperanza. Id. at ¶ 31.

---

[3]According to Ms. Brothers, Ms. Del Castillo was permitted speak Spanish with Spanish-speaking claimants. Brothers Aff. ¶ 14 (Dkt. # 89). Ms. Brothers contends that the only issue to arise concerning Spanish communication was Ms. Del Castillo's provision of assistance to an employee from a separate DSHS division in the translation of documents. Id. On that occasion, Ms. Brothers informed Ms. Del Castillo that she was not certified to work as an interpreter. Id.

ORDER – 3

**B.     Ms. Del Castillo's Performance Evaluations**

After several weeks of classroom instruction and hypothetical case assignment, the DDS provided the trainees, including Ms. Del Castillo, with actual cases to process.  In September 2003, Ms. Brothers noted that Ms. Del Castillo appeared to misunderstand instructions and that she was experiencing difficulty with software programs.  Fisk Aff. ¶ 14, Ex. A at 2, 3.  Specifically, Ms. Brothers observed that Ms. Del Castillo was not requesting the proper information from DDS clients or sending requests for information to the correct source.  Id.  On October, 21, 2003, Ms. Brothers noted several additional areas of concern.  Id. at 7, 8.

In Ms. Del Castillo's November 20, 2003 evaluation, Ms. Brothers again noted several areas of concern, including difficulties with intake and development of claims, failure to choose the correct clinic or medical provider, failure to request medical information from all available sources, problems with following the proper steps in ordering a consultative exam, confusion concerning medical claims, and difficulties with the process of closing claims.  Fisk Aff., Ex. A at 10-14; Brothers Aff. ¶¶ 26-27.   In her written response, Ms. Del Castillo blamed the inadequacy of her training.  Fisk Aff., Ex. A at 15.

On December 5, 2003, Ms. Del Castillo received yet another performance evaluation.  Based on the observations of Ms. Brothers, Ms. Fisk, and Mr. White, Ms. Del Castillo was not progressing despite four months of training.  Brothers Aff. ¶ 32.  Ms. Brothers placed Ms. Del Castillo on a performance plan to provide her with clear direction as to her supervisors' expectations and the basis for concerns.  Id., Ex. G.  The performance plan required Ms. Del Castillo to provide Ms. Brothers with information regarding her case assessments, and to meet with Ms. Brothers on a daily basis.  Id.  By Ms. Brothers account, she spent an "inordinate" amount of time assisting Ms. Del Castillo.  Id. at ¶ 33.

ORDER – 4

**C.    Ms. Del Castillo's Request for a Transfer**

On December 11, 2003, Ms. Del Castillo contacted Mr. White to request a transfer to another unit. See White Aff. ¶ 21, Ex. A (stating that she was up to the "challenge" of another position). Mr. White denied the request, informing Ms. Del Castillo that he did not recommend transfers for probationary employees, explaining that a transfer would be "disruptive" during the training period. Id.

**D.    Termination of Ms. Del Castillo's Probationary Employment**

Ms. Del Castillo took approved leave from December 29, 2003, through January 4, 2004. During this time, Ms. Brothers assumed responsibility for Ms. Del Castillo's cases and, by her account, discovered numerous problems. Among these, Ms. Brothers observed that Ms. Del Castillo neglected to request medical information for cases that had been assigned 3-4 weeks earlier, whereas adjudicators are expected to initiate such requests within 24 hours of receiving a new case. Brothers Aff. ¶ 43, Ex. I.

Thereafter, Mr. White recommended the termination of Ms. Del Castillo's probationary employment to DDS Director Dr. Jones. After considering documentation and feedback from Ms. Brothers, Ms. Fisk, and various medical consultants, Dr. Jones determined that Ms. Del Castillo was not performing satisfactorily. Jones Aff. ¶ 8, Ex. E (Dkt. # 86).[4] During a meeting held on January 5, 2004, Dr. Jones provided Ms. Del Castillo with a performance evaluation and a letter of termination effective January 12, 2004. Id.

In addition to Ms. Diaz Del Castillo, the DDS provided one other adjudicator trainee, a Caucasian woman in her 40s, with a letter of termination on January 5, 2004. The DDS subsequently hired two new adjudicators. The first adjudicator, a 49-year-old

---

[4]Dr. Jones's assessment noted, among other issues, failure to recognize correct medical sources, development of claims without supervisor approval, rating claims without proper development, delay in creating case plans and ordering medical evidence, failure to accurately analyze impairments and functioning ability, and failure to follow medical consultants' instructions. Jones Aff. ¶ 8, Ex. E.

ORDER – 5

African-American woman, began working in January 2004. The DDS hired a second adjudicator, a 60 year-old Caucasian woman, in May 2004. Both successfully completed their 6-month probationary periods. White Aff. ¶ 32, Ex. F; Brothers Aff. ¶ 39.

Ms. Del Castillo filed her original complaint on June 20, 2005. Her third amended complaint alleges hostile work environment, disparate treatment, and retaliation on the basis of her age and race or national origin. She seeks relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 § U.S.C. 2000e-2(a)(1), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), and the Washington Law Against Discrimination ("WLAD"), RCW § 49.60.010, et seq. The DSHS now moves for summary judgment.

## III. ANALYSIS

**A.   Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by producing evidence that negates an essential element of the non-moving party's case, or (2) after suitable discovery, by showing that the non-moving party does not have enough evidence of an essential element to carry its burden of persuasion at trial. Id. at 322-23; see also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden, the opposing party must present evidence to support its claim or defense. Cline v. Indust. Maint. Eng'g. & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000). For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

ORDER – 6

**B.     Eleventh Amendment Immunity**

Defendants move to dismiss Ms. Del Castillo's claims under the ADEA and WLAD on the basis of Eleventh Amendment immunity. The Eleventh Amendment grants sovereign immunity to states against suit in federal court: "[E]ach State is a sovereign entity in our federal system; and . . . it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (quotation and citation omitted).[5] As a state agency, the DSHS is entitled to invoke the protections of the Eleventh Amendment. See In re Pegasus Gold Corp., 394 F.3d 1189, 1195 (9th Cir. 2005) ("[A]gencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court.") (quotation and citation omitted).

There are, however, two "well-established" exceptions to the Eleventh Amendment bar: legislative abrogation of immunity by express congressional intent under its Fourteenth Amendment powers, and waiver of immunity by a state itself. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). By enacting Title VII under its Fourteenth Amendment powers, Congress abrogated the sovereign immunity of states to suits under Title VII. See, e.g., Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). Accordingly, the DSHS concedes that the Eleventh Amendment does not bar Ms. Del Castillo's claims under Title VII. By contrast, the United States Supreme Court has specifically held that Congress did not validly abrogate Eleventh Amendment immunity when it enacted the ADEA. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000). Thus, Ms. Del Castillo may not proceed under a theory of Congressional abrogation in regard to the ADEA. This exception is likewise inapplicable to the WLAD – a statute enacted by the Washington Legislature.

---

[5]Although an exception to this rule permits suits for prospective injunctive relief against a state official, see Ex parte Young, 209 U.S. 123, 160 (1908), Ms. Del Castillo does not name a DSHS official as a defendant.

ORDER – 7

The United States Supreme Court has long recognized that a state's sovereign immunity is a "personal privilege which it may waive at its pleasure." Clark v. Barnard, 108 U.S. 436, 447 (1883). Federal courts find waiver if the state makes a "clear declaration that it intends to submit itself to [federal] jurisdiction." College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 676 (1999). Statutes or constitutional provisions expressing a general waiver of sovereign immunity, without expressly subjecting the state to suit in federal court, do not waive Eleventh Amendment immunity. Atascadero, 473 U.S. at 238. Here, Washington's Constitution generally provides that the "[state] legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." Wash. Const. art. II, § 26. RCW § 4.92.010 gives effect to this mandate in specifying that persons with claims against the state "shall have a right of action . . . in the superior court." While this statute expresses the state's consent to be sued, it confers consent only with respect to state court.[6] Accordingly, the court concludes that Washington has not waived its Eleventh Amendment immunity because neither the provisions of the state Constitution, nor the related statutory provision, specifically indicate Washington's willingness to be sued in federal court. See Skokomish Indian Tribe v. France, 269 F.2d 555, 561 (9th Cir. 1959) (recognizing that RCW § 4.92.010 expresses Washington's consent to be sued only with respect to suits in state court); Rains v. State, 674 P.2d 165, 170 (Wash. 1983) (recognizing that Washington has not waived the protection of the Eleventh Amendment).

The court finds unavailing Ms. Del Castillo's argument that the DSHS waived its immunity by defending this case on the merits and supposedly failing to raise immunity in a timely matter. A waiver occurs "when the state's conduct during the litigation

---

[6]Notably, a related statutory provision imposes an additional jurisdictional barrier to Ms. Del Castillo's WLAD claims. RCW § 4.92.100 provides that a plaintiff asserting claims for damages against the state must first file her claims with the state's risk management division. See Blair v. Washington State Univ., 740 P.2d 1379, 1389 (Wash. 1987) (upholding RCW § 4.92.100's notice provision as jurisdictional bar to WLAD claims). There is no evidence that Ms. Del Castillo has fulfilled this provision.

ORDER – 8

clearly manifests acceptance of the federal court's jurisdiction or is otherwise incompatible with an assertion of Eleventh Amendment immunity." Hill v. Blind Indus. and Servs., 179 F.3d 754, 759 (9th Cir.1999); see also Demshki v. Monteith, 255 F.3d 986, 989 (9th Cir. 2001) (recognizing "that Eleventh Amendment immunity is an affirmative defense . . . that must be raised early in the proceedings to provide fair warning to the plaintiff"). The DSHS timely asserted sovereign immunity in its answer to Ms. Del Castillo's second amended complaint – the first complaint to allege ADEA claims. See Answer ¶ 13 (Dkt. # 41). The DSHS again asserted sovereign immunity in its answer to Ms. Del Castillo's third amended complaint. See Answer at ¶ 58 (Dkt. # 80). Under the present circumstances, the DSHS provided Ms. Del Castillo with a fair warning of its intent to assert an immunity defense, and thus, it has not waived immunity through its conduct. Cf. Hill, 179 F.3d at 756 (holding that state defendant waived immunity "by participating in extensive pre-trial activities and waiting until the first day of trial" to raise immunity defense).

Because Ms. Del Castillo's claims under the ADEA and WLAD are barred by the Eleventh Amendment, and neither exception applies, the court grants the DSHS's motion for summary judgment with respect to all claims asserted under these statutes. The court's dismissal of Ms. Del Castillo's claims under the WLAD is without prejudice to refiling such claims in a court of competent jurisdiction.

**C.    Title VII Claims**

Ms. Del Castillo alleges that the DSHS's actions violated Title VII's protection against invidious discrimination in the workplace. See 42 U.S.C. § 2000e-2(a)(1) (making it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.").[7]

---

[7]The DSHS concedes that Ms. Del Castillo is a member of a protected class on account of her race or national origin.

ORDER – 9

Ms. Del Castillo raises three separate Title VII claims: creation of a racially hostile work environment, disparate treatment on account of race or national origin, and retaliation for engaging in a protected activity.

At the threshold, the court rejects the DSHS's argument that Ms. Del Castillo's Title VII claims are untimely. Ms. Del Castillo received her right to sue letter from the EEOC on March 25, 2005. Clarke Aff. ¶ 2 (Dkt. # 106). On June 20, 2005, prior to the expiration of the 90-day period prescribed by 42 U.S.C. § 2000e-5(f)(1), Ms. Del Castillo filed a motion for leave to proceed in forma pauperis ("IFP") to which she attached her complaint. The DSHS contends that Ms. Del Castillo did not file her complaint until June 29, 2005 – the date the court actually granted her IFP status, and 96 days following receipt of the right to sue letter. In so arguing, the DSHS overreaches. A complaint is considered filed when it is placed in the possession of the clerk of the court. Cintron v. Union Pac. R.R. Co., 813 F.2d 917, 920 (9th Cir. 1987). The court considers Ms. Del Castillo's complaint as constructively filed on the date she filed her motion for IFP status, or June 20, 2005.

### 1. Hostile Work Environment

To establish a prima facie hostile work environment claim under Title VII, Ms. Del Castillo must raise a triable issue of fact as to whether: (1) the DSHS subjected her to verbal or physical conduct because of her race or national origin; (2) the conduct was unwelcome; and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003). The conduct at issue must be perceived as abusive, both subjectively from Ms. Del Castillo's perspective and objectively from the perspective of a reasonable Hispanic. See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1115 (9th Cir. 2004).

The court concludes that Ms. Del Castillo has failed to make out a prima facie claim of a hostile work environment. While Ms. Del Castillo may have subjectively

ORDER – 10

experienced hostility, she fails to bring forth evidence to demonstrate that the DSHS subjected her to verbal or physical conduct, based on her race or national origin, that a reasonable Hispanic would find abusive. Importantly, Title VII is not a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citation omitted). To that end, a hostile work environment is uniformly characterized by the existence of either severe or pervasive racial slurs, offensive jokes, epithets, racially derogatory remarks, taunts and the like. Compare Vasquez, 349 F.3d 643-44 (reviewing case law and holding that two racial epithets directed at plaintiff were insufficient to create a hostile working environment), with Nichols v. Azteca Rest. Enter., Inc., 256 F.3d 864, 872-73 (9th Cir. 2001) (holding that hostile work environment existed where plaintiff was subjected to relentless insults, name-calling, and vulgarities).

      The conduct of Ms. Del Castillo's supervisors falls into the "simple teasing" and "offhand comments" category of non-actionable discrimination. See Manatt v. Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003). Viewing the evidence in a light most favorable to Ms. Del Castillo, the court accepts as true her allegation that on two occasions during classroom instruction, Ms. Fisk identified "taco maker" as an appropriate occupation for a Hispanic DDS claimant. The court further considers Mr. White's jab at Ms. Del Castillo's Spanish surname as signifying royalty, which was at least nominally directed at Ms. Del Castillo's national origin. The court additionally accepts as true the allegations regarding Ms. Brother's criticism of Ms. Del Castillo's "strong accent" and the admonition concerning communication in Spanish as the province of DSHS translators. Even considering this conduct within the context of Ms. Del Castillo's status as the sole Hispanic trainee, the court concludes that her allegations are neither sufficiently severe nor pervasive to alter the conditions of employment. See id. (holding that racial jokes, ridicule of plaintiff's accent, and act of pulling eyes back to imitate or mock the appearance of Asians were insufficient to create a hostile work environment); Vasquez, 349 F.3d at 643 (finding no hostile environment discrimination where the employee was

ORDER – 11

told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others).

As to Ms. Del Castillo's remaining allegations concerning her experiences during training, she fails to produce evidence to show that her supervisors' conduct was based on her race or national origin. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *discrimination* . . . .") (emphasis in original). In regard to Ms. Fisk's ejection of Ms. Del Castillo from her class, Ms. Del Castillo's own testimony corroborates that she was ill the day Ms. Fisk sent her home. See Del Castillo Decl. ¶ 41 ("I was still sick when I arrived home . . . and had to visit my physician, who prescribed medicine."). The court therefore cannot conclude that the incident manifests racial animus. As to the use of the "diminutive," "Espie" on Ms. Del Castillo's training certificate, the court is not persuaded that the presence of a shortened version of "Esperanza" evidences conduct of a racially discriminatory nature.

Taken in the light most favorable to Ms. Del Castillo, the facts indicate that she may have subjectively experienced an unpleasant working environment – but not harassment based on race or national origin sufficient to give rise to a claim under Title VII. Accordingly, the court grants the DSHS's motion for summary judgment as to Ms. Del Castillo's hostile work environment claim.

**2.    Disparate Treatment**

Ms. Del Castillo alleges disparate treatment based on her race or national origin with respect to the training DSHS provided, its denial of her request to transfer to a different division, and its decision to terminate her probationary employment. Absent direct evidence of discrimination, Ms. Del Castillo may prove her case through circumstantial evidence under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). To withstand summary judgment on a discrimination claim based on race or national origin, a plaintiff must provide some

ORDER – 12

evidence to meet the shifting burdens of proof that she would face at trial.  First, a plaintiff must establish a prima facie case by providing evidence that gives rise to an inference of unlawful discrimination.  <u>Lyons v. England</u>, 307 F.3d 1092, 1112 (9th Cir. 2002).  A prima facie case creates a rebuttable presumption that the defendant employer can counter by showing facially nondiscriminatory reasons for its actions.  <u>Id.</u>  If the employer sustains this burden, the plaintiff must then demonstrate that the proffered nondiscriminatory reason is merely a pretext for discrimination.  The plaintiff can prove pretext either (1) indirectly, by showing that the employer's proffered explanation is "unworthy of credence" because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.  <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220-22 (9th Cir. 1998).

### a.     Training Opportunities

Ms. Del Castillo alleges disparate treatment in the DSHS's provision of training opportunities.  In order to establish a prima facie case, she must show that: (1) she belonged to a protected class; (2) she was qualified for her job; (3) she was subjected to an adverse employment action; and (4) similarly situated employees not in her protected class received more favorable treatment.  <u>Kang v. U. Lim Am., Inc.</u>, 296 F.3d 810, 818 (9th Cir. 2002).  Here, Ms. Del Castillo's claims founder on the third and fourth elements of the prima facie case.

With regard to training opportunities, Ms. Del Castillo alleges the following: unlike other trainees, her supervisors did not offer her one-on-one supervisory guidance; the DSHS segregated her from other trainees; her supervisors limited her to submitting written questions; and the DSHS denied her the opportunity to repeat training.

Ms. Del Castillo fails to produce evidence that she was, in fact, denied training opportunities available to similarly situated employees.  The DSHS's evidence shows, that like all trainees, Ms. Del Castillo had access to her direct supervisor, the trainer, three designated medical consultants, and, in the absence of her direct supervisor, other

supervisors. Fisk Decl. ¶ 5, 8, 11. Ms. Del Castillo's allegation as to the denial of one-on-one training is both vague and unspecified; she does not identify a trainee whose experience in this regard was distinct from hers, nor does she directly dispute Ms. Brother's testimony that she in fact provided Ms. Del Castillo with one-on-one training. Brothers Aff. ¶ 33. While Ms. Del Castillo surmises that the DDS provided trainees on the fourth floor with greater opportunities to succeed, she fails to produce evidence to support this allegation. Furthermore, Ms. Del Castillo does not dispute the DSHS's evidence that it required all trainees to submit questions concerning their cases in written form. See Brothers Aff. ¶ 10 (describing "Electronic Worksheet System"). Lastly, as to the DSHS's purported denial of the opportunity to repeat training, there is no evidence that the DSHS afforded such an opportunity to a similarly situated trainee. In fact, the DSHS terminated the employment of another trainee for performance-related issues on the same date it terminated Ms. Del Castillo's employment. White Aff. ¶ 26.

Because Ms. Del Castillo has neither demonstrated that the DSHS subjected to her to an adverse employment action, nor that similarly situated employees received more favorable treatment, the court grants the DSHS's motion with regard to training opportunities.

### b. Refusal of Ms. Del Castillo's Request to Transfer

The disparate treatment claim on the basis of the DSHS's denial of Ms. Del Castillo's request to transfer likewise founders on the third and fourth elements of the prima facie case. Mr. White's decision to deny Ms. Del Castillo's request to transfer did not constitute an adverse employment action because it was not a "disadvantageous" change in the workplace, but a continuation of the status quo. See generally Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000) (discussing the range of adverse employment actions). Moreover, Ms. Del Castillo fails to produce evidence of any probationary employee who was granted a transfer during his or her training period.

ORDER – 14

Because there is no evidence that a similarly situated employee received more favorable treatment, this claim too fails.

### c. Termination of Ms. Del Castillo's Probationary Employment

As to Ms. Del Castillo's claim of wrongful termination, the court concludes that she has adduced sufficient evidence to establish a prima facie case. There is no dispute that the DSHS terminated Ms. Del Castillo and that it replaced her with a non-Hispanic candidate.

Because Ms. Del Castillo surmounts this initial hurdle, the burden shifts to the defendant to produce evidence demonstrating a legitimate, nondiscriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802. Here, the DSHS demonstrates legitimate, facially nondiscriminatory reasons for its decision to terminate Ms. Del Castillo's employment through its evidence of her performance-related issues. See, e.g., Fisk Aff., Ex. A (evaluations from September 2003 through November 2003 stating Ms. Brothers' concerns with Ms. Del Castillo's performance); Jones Aff., Ex. E (letter of termination listing 10 areas in which Ms. Del Castillo failed to meet minimum acceptable standards). The DSHS has met its burden by providing a legitimate reason for discharge, and thus, the presumption of unlawful discrimination "drops out of the picture," and Ms. Del Castillo must show that the DSHS's alleged reason for terminating her was merely a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). She may prove pretext either by direct or circumstantial evidence. Godwin, 150 F.3d at 1220-22. Relying on circumstantial evidence to show pretext, however, requires Ms. Del Castillo to "put forward specific and substantial evidence" challenging the credibility of the DSHS's motive. Id. at 1221. The court concludes that Ms. Del Castillo's claim ultimately fails because she has not produced sufficient evidence of pretext to meet her burden.

Ms. Del Castillo has offered no direct evidence of discriminatory intent. "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without

ORDER – 15

inference or presumption." Id.  The Ninth Circuit has held that a "stray remark" that is "uttered in an ambivalent manner and [is] not tied directly to [the plaintiff]'s termination," is insufficient to constitute direct evidence of pretext.  Id. (quotation and citation omitted).  While the court is troubled by Ms. Fisk's "taco maker" teaching example, it falls short of proving discriminatory animus in the context of Ms. Del Castillo's termination.  Ms. Brother's comment concerning Ms. Del Castillo's accent and her directive concerning the use of a translator are also insufficient to prove hostility on the basis of Ms. Del Castillo's race or national origin "without inference or presumption."  See id.  Moreover, Ms. Del Castillo has not shown the necessary nexus between any of these remarks and Dr. Jones's ultimate decision to terminate her employment.

As to circumstantial proof, other than Ms. Del Castillo's opinion that her negative evaluations were unwarranted, she produces no evidence to the contrary of the DSHS's proffer of her performance-related issues.  See Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996) ([A]n employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact.") (citation omitted).  Ms. Del Castillo's contention that she quickly processed her cases is unavailing, as her supervisors' negative evaluations focus on the quality of her work, not its quantity.  See Fisk Decl., Ex. A.  The court is also unpersuaded by Ms. Del Castillo's argument that she only began receiving negative evaluations after she lodged her complaints concerning the "taco maker" remark.  The DSHS's undisputed evidence establishes that Ms. Del Castillo first complained about the remark on or about October 24, 2003.  Brothers Aff. ¶ 25.  The performance evaluations, however, show that Ms. Brothers began noting concerns with Ms. Del Castillo's performance as early as October 3, 2003, and October 21, 2003.  See Fisk Decl., Ex. A.  Finally, Ms. Del Castillo's vague and unspecified claim that there were technical problems with the DSHS's computer systems is unsupported by any evidence.

ORDER – 16

In sum, the court finds that Ms. Del Castillo's contentions do not meet the standard of specific and substantial evidence necessary to show that the DSHS's reasons for her termination are unworthy of credence, or that unlawful discrimination was the more likely motivation for her termination. The court therefore grants the DSHS's motion for summary judgment on Ms. Del Castillo's unlawful termination claim.

### 3. Retaliation

Like the disparate treatment claim, the court analyzes a summary judgment motion on a retaliation claim under the burden-shifting framework of McDonnell Douglas, 411 U.S. at 802-03. To establish a prima facie case of retaliation, Ms. Del Castillo must show that she engaged in a protected activity and that the DSHS took adverse employment action against her because of it. Ray, 217 F.3d at 1240. Ms. Del Castillo must establish a causal link between the protected activity and the adverse employment action. Id.

The court finds that Ms. Del Castillo has produced sufficient evidence to satisfy the first element of a prima facie case of retaliation. Ms. Del Castillo engaged in a protected opposition activity if she reasonably believed that the conduct she opposed (here, discrimination on the basis of national origin or race) constituted a violation of Title VII. Moyo v. Gomez, 32 F.3d 1382, 1386-86 (9th Cir. 1994). Ms. Del Castillo's objections to the "taco maker" remark suffice. See Ray, 217 F.3d at 1240 n.3 (recognizing that an informal complaint of discrimination to a supervisor is a protected activity).[8]

As to the occurrence of an adverse employment action, the court finds that the termination of employment plainly qualifies. In addition, the court assumes without

---

[8] Ms. Del Castillo presents evidence of additional complaints concerning, for instance, her supervisors directives not to ask questions and isolation on the third floor. Absent evidence demonstrating that she complained of unlawful discrimination, such generalized grievances do not qualify as protected activities.

ORDER – 17

deciding, that Ms. Del Castillo's below-average performance evaluations and her ejection from class, also constitute adverse employment actions.

The record, however, falls short of establishing a causal connection between Ms. Del Castillo's complaint, which occurred on or about October 24, 2003, and her below-average evaluations because, as described above, the negative feedback began before she complained. What is more, even if the court were to conclude that Ms. Del Castillo could establish a causal connection between her complaint and her ejection from class or the termination of her employment, the DSHS has met its burden in producing evidence of non-retaliatory reasons for each of these actions. As described above, the DSHS's termination of Ms. Del Castillo's employment was justified by legitimate, nondiscriminatory, performance-related issues. As to Ms. Del Castillo's ejection from class, Ms. Fisk sent Ms. Del Castillo home for the stated – and undisputed – reason that she was ill.

As set forth in the court's discussion of the wrongful termination claim, Ms. Del Castillo has failed to come forward with evidence of pretext either by showing that the DSHS's proffered explanations are "unworthy of credence" or through direct evidence of discriminatory animus. See Godwin, 150 F.3d at 1220-22. The court therefore grants the DSHS's motion for summary judgment on Ms. Del Castillo's retaliation claim.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS the DSHS's motion for summary judgment (Dkt. # 82) as to all claims. The court's dismissal of Ms. Del Castillo's WLAD claims on sovereign immunity grounds is without prejudice to asserting such claims in a court of competent jurisdiction. The court dismisses the remaining claims against the DSHS with prejudice.

The court directs the clerk to enter judgment consistent with this order.

1       Dated this 14th day of September, 2007.

                                    _____
                                    JAMES L. ROBART
                                    United States District Judge

ORDER – 19